298

**In re ANTISELL et al.**
**Patent Appeal No. 2842.**

Court of Customs and Patent Appeals.
Feb. 29, 1932.

Milans & Milans, of Washington, D. C. (Usina & Rauber, of New York City, of counsel), for appellants.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellants' application for a patent, filed in the United States Patent Office, relates to the production of copper cakes from which copper sheets are rolled.

Claims 3, 4, 6, and 7 of the application were allowed, and claims 8, 9, and 10 were rejected by the Examiner, which action was affirmed by the Board of Appeals.

Claims 11 and 12 were proposed by the applicants after final rejection, but were not entered by the Examiner. The Board declined to consider them. The action of the Board of Appeals in affirming the Examiner in the rejection of claims 8, 9, and 10, and its failure to consider claims 11 and 12, is assigned as error in appellants' reasons of appeal.

The application relates to a copper cake and the method of making it, which cake when made is approximately ten inches, sixteen inches, and four inches in its three dimensions. It is cast endwise and in tapered form so that the top end constitutes the "set face" of the copper; that is to say, it is that portion of the copper which has not been molded against a flat surface.

Appellants claim to have discovered that many beneficial results are obtained by molding a copper cake in a tapered one-piece mold, which mold would give the cake the shape, dimensions, and characteristics referred to. They point out that it is desirable to have the least possible "set face"; that, when the "set face" portion of a copper cake forms a surface of the rolled sheet, certain stains and discolorations show on the surface which hasten corrosion. The applicants state that the elimination of the discoloration or stains makes the rolled product of uniform color and increases its resistance to corrosion. In addition to the discoloration, one other undesirable result of the old method of casting the cake flat, and having the rolls come in contact with a large "set face," was the fact that there was about 30 per cent. of waste brought about in cropping or trimming off the edges. This waste, applicants state, has been reduced, by their method, to about 5 per cent.

The record shows that on December 21, 1926, 18 per cent. of the sheet copper produced in the United States was produced by appellants' end-poured method.

We will first consider the fourth assignment of error which challenges the correctness of the refusal of the Board of Appeals to consider claims 11 and 12. The appeal from the action of the Examiner was taken on September 21, 1929, and the Examiner's statement is dated October 23, 1929. On April 30, 1930, the applicants asked the Examiner to amend the application by inserting claims 11 and 12. The record shows no action whatever by the Examiner in connection with these claims.

The Board's refusal to consider the claims was based upon Ex parte Moore, 1923 C. D. 13, 307 O. G. 4, in which the First Assistant Commissioner of Patents, in passing upon a petition for rehearing, said: "It is desirable that all claims, so far as possible, which an appellant desires reviewed on appeal, should be first presented to the Primary Examiner. He is regarded as the Office expert in the particular art involved in a given instance. His opinion and judgment should be before an appellate tribunal when the latter reviews the Examiner's holding."

Although appellants have filed a brief, which is rather elaborate on other matters involved in this appeal, they have not discussed the action of the Board in refusing

to consider claims 11 and 12 further than to state that claims 11 and 12 are like claims 8 and 9, except that they are not limited to a tapered form of cake, and that they knew nothing of the failure of the Examiner to enter the same until they were so informed in the decision of the Board of Appeals.

We think that the Board properly refused to consider claims 11 and 12. Ex parte Moore, supra, is abundant authority for such action. See also rule 68 of the Rules of the United States Patent Office.

 Claims 8, 9, and 10 are as follows:

"8. A copper cake of the character described for rolling into sheets and sheet bars, having side faces *of considerable width and length and having comparatively thin ends and edges,* said cake being cast endwise in tapered form so that its upper end constitutes the set surface of the copper and its side faces and edges are smooth.

"9. A copper cake of the character described for rolling into sheets and sheet bars, having side faces *of considerable width and length and having comparatively thin ends and edges,* said cake being cast endwise in tapered form so that its upper end constitutes the set surface of the copper and its side faces and edges are smooth, the depth of said cake from the set surface to the opposite end being in excess of eight inches.

"10. The method of making copper cakes for rolling into sheets and sheet bars, said cakes having side faces *of considerable length and breadth and having comparatively thin ends and edges,* which method consists in pouring the copper to form said cakes endwise into tapered one-piece molds and thus producing smooth surfaces on the side faces and the upright edges. [Italics ours.]"

The references relied upon are: Cooper, 192,114, June 19, 1877; Tallman, 412,566, October 8, 1889; Wooster, 475,652, May 24, 1892; Leibman, 757,208, April 12, 1904; Gathmann, 1,061,467, May 13, 1913; Gathmann, 1,246,736, November 13, 1917.

Appellants argue that, while the result of the findings of the Examiner and the Board concur, the reasons assigned are not concurring. They point out that the Examiner regarded claims 8 and 9 as indefinite inasmuch as the terms "considerable width and length," "considerable length and breadth," and "comparatively thin," are indefinite, since it is not known 'what measurements would conform to these terms, while the Board stated that "claims [8 and 9] are definite within these limitations, however slight, and that these claims as a whole are merely broad rather than indefinite." Claims 8 and 9 were also rejected by the Examiner and by the Board on the prior art. Claim 10, a process claim, which contains the phrase "which method consists in pouring the copper to form said cakes endwise into tapered one-piece molds and thus producing smooth surfaces [etc.]," was rejected by both tribunals for the reason that it was obvious to use a one-piece mold in place of the two-piece upright tapered molds shown in the prior art, and that, if it were so used, the surface of the cakes which came in contact with the mold would be free from foreign bodies and possess the regular and smooth character which was desirable.

We think that the claims allowed appellants, of which claims 4 and 6 are illustrative, fully define the limit of the invention claimed and disclosed in appellants' application. Claims 4 and 6 follow:

"4. A copper cake of the character described for rolling into sheets and sheet bars cast endwise in tapered form so that its upper end constitutes the set face of the copper and its sides and edges are smooth, the width, length and thickness of such cakes being substantially in the ratio of 10x16x4½."

"6. The method of producing a copper sheet bar which includes in combination the following steps,—casting a cake with certain faces and edges in contact with the sides of a tapered one-piece mold which produces smooth surfaces on said faces and edges, and rolling said cake out into a bar with rolls engaging said smooth surfaces."

Allowed claims 3 and 4 are directed to the cake as a commercial product, but are limited to certain dimensions or proportions of length, width, and thickness. Allowed claims 6 and 7 are for the complete method of producing the sheet bar, including the casting of the cake and the rolling of it.

We agree with the decision of the Board affirming the action of the Examiner in refusing to allow claims 8, 9, and 10, and in refusing to consider claims 11 and 12, and agree with the reasons assigned therefor. We do not regard it as necessary, in view of our complete approval of the views of the Board, to further refer to the references.

The decision of the Board of Appeals is affirmed.

Affirmed.